NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250232-U

NO. 4-25-0232

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 12, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* ADOPTION OF G.T., a minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (Wesley E., | ) | Adams County |
|     Petitioner-Appellant, | ) | No. 23AD6 |
|     v. | ) | |
| Madalyn T., | ) | Honorable |
|     Respondent-Appellee). | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Presiding Justice Harris and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court reversed the trial court's order dismissing a putative father's petition to vacate the adoption of a minor, concluding the trial court erred in dismissing on the basis of *res judicata*.

¶ 2        Wesley E., the putative father of a minor, G.T., filed a petition to vacate the adoption of G.T. by her stepfather, which was consented to by Madalyn T., G.T.'s mother. The trial court dismissed Wesley's petition to vacate on the grounds of *res judicata*, finding the dismissal of Wesley's prior action to establish parentage finally decided the issue of the paternity of G.T. Wesley appealed. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4        G.T. was born in 2017 to Madalyn. On February 9, 2023, Madalyn and her husband, Alex M., whom she married on March 20, 2021, filed a petition for adoption, seeking to have Alex adopt G.T. The petition alleged G.T.'s biological father was unknown, Madalyn

and the unknown father were unmarried, and paternity was never established. The petition also alleged the biological father was an unfit parent in that he had abandoned and deserted G.T. for more than three months preceding the commencement of the adoption and had failed to maintain a reasonable degree of interest, concern, or responsibility as to G.T.'s welfare. Notice to all known and unknown fathers was by publication in the Liberty Bee Times on March 15, 22, and 29, 2023. A judgment for adoption was entered on April 24, 2023. Pursuant to the judgment, all parental rights of the unknown putative father were terminated.

¶ 5        On October 31, 2024, Wesley initiated a family court proceeding by filing a petition to establish a parent-child relationship with G.T., allocate parental responsibilities and parenting time, and establish child support. Madalyn filed a motion to dismiss that action, citing the final order of adoption, which Wesley contends was his first notice of the adoption. Madalyn's motion to dismiss was granted with prejudice.

¶ 6        On December 13, 2024, Wesley filed a petition to vacate the judgment for adoption pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2024)). In the petition to vacate, Wesley alleged he is the biological father of G.T., who was born of a relationship between Wesley and Madalyn. He also alleged, prior to G.T.'s birth, in June 2017, Madalyn informed Wesley he may be the father of her child. Following G.T.'s birth, Madalyn engaged in conduct indicating Wesley was the father of G.T., and Wesley engaged in conduct acknowledging he was G.T.'s father, such as participating in parenting time, sending support checks, and attending parties. Wesley alleged he did not believe G.T. was subject to adoption. In late 2018, Wesley was charged with felony criminal charges, after which time Madalyn refused to allow Wesley access to G.T. Wesley was ultimately found not guilty of the criminal charges in October 2020, but Madalyn continued to refuse to allow Wesley access to

- 2 -

G.T. Wesley alleged he continued to message Madalyn regarding G.T. until 2021, when Madalyn blocked Wesley's telephone number and blocked him on all social media. Wesley alleged he has had the same telephone number since 2018, and he and Madalyn lived less than a mile apart. Wesley did not learn of the judgment of adoption until Madalyn filed her motion to dismiss his parentage petition on November 8, 2024. Wesley never received notice of or consented to the adoption, even though Madalyn knew he was the biological father of G.T. Wesley alleged Madalyn failed to exercise due diligence or make a good-faith effort to notify him and committed a fraud on the court by claiming G.T.'s father was unknown and his location was unknown. He argued, as the court did not have proper jurisdiction over him in the adoption proceeding, the final order of adoption was improper and should be vacated.

¶ 7        Madalyn filed a motion to dismiss Wesley's petition to vacate, arguing the dismissal of Wesley's parentage petition established the issue of parentage. She also alleged notice of the adoption proceeding by publication was appropriate, and the adoption was proper.

¶ 8        The trial court granted Madalyn's motion to dismiss the petition to vacate the judgment of adoption, concluding the issue of paternity had already been decided upon the dismissal of Wesley's parentage petition. The court held *res judicata* barred Wesley's petition to vacate. This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10        Wesley contends the judgment of adoption was void for lack of jurisdiction because he, the biological father, was known and was not served notice. Wesley argues the trial court erred in dismissing his petition to vacate on the grounds of *res judicata* because Madalyn failed to establish two of the three prongs necessary for the doctrine: there was no final judgment on the jurisdictional issue raised in Wesley's petition to vacate and there was not an identity of

- 3 -

cause of action between the evidence presented in the parentage action and the evidence alleged in Wesley's petition to vacate. Wesley asks this court to reverse the decision of the trial court and remand the cause for further proceedings.

¶ 11     Madalyn argues the trial court properly dismissed Wesley's petition to vacate. Madalyn contends the court properly applied *res judicata* because Wesley's parentage action was untimely, so he did not have the right to withhold consent to G.T.'s adoption. Also, Madalyn argues the petition to vacate was time-barred and Wesley lacked standing because he failed to register as a putative father or bring his parentage petition before Madalyn and Alex initiated the adoption proceeding. She contends we may affirm on any basis in the record, but the latter two grounds are more straightforward bases to affirm the dismissal.

¶ 12                    A. Accelerated Appeal Filing Deadline

¶ 13     We note this is an accelerated appeal under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018). Under that rule, this court is required to issue its decision in an accelerated case within 150 days of the filing of the notice of appeal unless there has been "good cause shown." *Id.* In this case, Wesley filed his notice of appeal on March 11, 2025, so the disposition of this court was due to be filed on August 8, 2025, which has passed. We note Wesley, the appellant, requested oral argument, but his reply brief was not due until after the July 2025 oral argument calendar was finalized. Given the timing of the briefing schedule and the need to schedule and hold oral argument, we conclude there is "good cause shown" (*id.*) for issuing our disposition after the 150-day deadline.

¶ 14                    B. Standard of Review

¶ 15     Madalyn did not specify whether she brought her motion to dismiss under section 2-615 or 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2024)). A motion to dismiss under

either section admits as true all well-pleaded facts and reasonable inferences. *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 24. A motion to dismiss under 2-615 of the Code attacks the legal sufficiency of the claim, while a motion to dismiss under section 2-619 of the Code admits the legal sufficiency of the claim but asserts defenses or defects outside the pleading to defeat the claim. *Id.* ¶ 23. As Madalyn's motion to dismiss raised an affirmative matter outside the record, specifically, the judgment in the parentage action, we find the motion to dismiss was granted pursuant to section 2-619 of the Code. See 735 ILCS 5/2-619(a)(9) (West 2024)); *See v. Illinois Gaming Board*, 2020 IL App (1st) 192200, ¶ 10. A dismissal under either section is subject to the *de novo* standard of review. *Mercado v. S&C Electric Co.*, 2025 IL 129526, ¶ 19. A dismissal on the basis of *res judicata* is also subject to the *de novo* standard of review. *Ward v. Decatur Memorial Hospital*, 2019 IL 123937, ¶ 44.

¶ 16                                    C. *Res Judicata*

¶ 17        *Res judicata* is a judicial construct that promotes judicial economy and leads to finality in litigation. *Id.* "Under the doctrine of *res judicata*, 'a final judgment on the merits rendered by a court of competent jurisdiction bars a subsequent action between the same parties or their privies involving the same cause of action.' " *Id.* (quoting *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 21). There are three elements necessary for a court to apply the doctrine of *res judicata*: " '(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies.' " *Id.* ¶ 45 (quoting *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 9). The burden of showing the applicability of the doctrine is on the party invoking it. *Id.*

¶ 18        Wesley contends two of the three elements are missing. He contends Madalyn failed to establish there was a final judgment on the merits "of the relief sought in Wesley's

[petition to vacate]" and failed to establish there was an identity of cause of action.

¶ 19   The final judgment on the merits that the trial court found was *res judicata* was the order dismissing Wesley's petition to establish paternity. The court concluded that dismissal order decided the issue of the paternity of G.T. and barred further action on the issue of paternity. The dismissal of the parentage petition was entered without explanation, but the motion was made on the basis that Wesley's petition to establish paternity was barred by the prior judgment for adoption. The dismissal was with prejudice, and Wesley did not appeal. That is a final judgment for purposes of the doctrine of *res judicata*. *Relph v. Board of Education of DePue Unit School District No. 103*, 84 Ill. 2d 436, 441 (1981) ("A judgment is final if it determines the litigation on the merits so that if affirmed the only thing remaining is to proceed with the execution on the judgment.").

¶ 20   Although Wesley contends the final judgment element was lacking, his argument that Madalyn failed to establish there was a final judgment on the merits "of the relief sought in Wesley's [petition to vacate]" is another way of stating his challenge to the third element, identity of cause of action. Illinois courts have adopted two tests for determining whether causes of action are the same for the purpose of *res judicata*. *Rodgers v. St. Mary's Hospital of Decatur*, 149 Ill. 2d 302, 312 (1992). The first test is called the "same evidence" test, whereby *res judicata* bars a second suit if the same evidence or facts are needed to maintain both actions. *Id.* The second test is the "transactional" test, whereby a second action is barred if it arises from the same transaction, incident, or factual situation as the first action so that it constitutes a single cause of action. *Id.*

¶ 21   Admittedly, both actions ultimately involve the paternity of G.T. We conclude, though, under either test, *res judicata* does not bar the present action. Here, the evidence relied

upon to dismiss Wesley's petition to establish paternity was the adoption judgment, which was valid on its face. See *In re M.M.*, 156 Ill. 2d 53, 62 (1993) (stating adoption constitutes a complete and permanent severance of all legal and natural rights between parent and child); 750 ILCS 50/17 (West 2024) (stating, after entry of the adoption judgment, the biological parent is deprived of all legal rights to the child); see also 750 ILCS 46/621(d) (West 2024) (stating a prior determination of parentage is a defense in a subsequent proceeding seeking to adjudicate parentage). The trial court held the dismissal determined paternity, while paternity was actually determined in the adoption action. The instant petition is a direct challenge to that adoption judgment. Wesley's petition to vacate attacks the validity of the adoption judgment on the basis that it was obtained without obtaining jurisdiction over Wesley. The validity of the adoption judgment was never litigated in the paternity action.

¶ 22 Thus, we conclude the trial court erred in dismissing Wesley's section 2-1401 petition on the basis of *res judicata*. We note that Madalyn's appellate counsel conceded as much at oral argument and acknowledged that using the dismissal of the parentage petition, on the basis of the adoption judgment, to bar a challenge to the adoption judgment was circular logic. Instead, counsel argued we should affirm the dismissal of Wesley's petition to vacate on the other grounds advanced in the appellee's brief. Generally, issues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). As the issues of standing and timeliness under the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2024)) were not presented or considered by the court below, we decline to address them in this appeal.

¶ 23                                     III. CONCLUSION

¶ 24 For the reasons stated, we reverse the trial court's judgment and remand for

further proceedings.

¶ 25          Reversed and remanded.